No. 23-1703

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

United States of America,

*Plaintiff-Appellant,*

v.

Triston Harris Steinman,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Nevada
3:22-cr-00068-ART-CLB-1
Hon. Anne R. Traum

---

## BRIEF OF NEVADA ATTORNEYS FOR CRIMINAL JUSTICE AS AMICUS CURIAE IN SUPPORT OF DEFENDANT-APPELLEE'S PETITION FOR REHEARING

---

Christopher M. Peterson
Nevada Bar No.: 13932
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 830-9205
Email: peterson@aclunv.org

*Counsel for ACLUNV*

Dallas Robert Anselmo
Nev. Bar No. #15863
Katherine Currie-Diamond
Nev. Bar No. #13676
309 S. Third Street
Las Vegas, NV 89101
Telephone: (702)455-4685

*Counsel for NACJ*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF AMICUS CURIAE ...................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUEMENT ................ 3

ARGUMENT ..................................................................................... 4

I.    Cross-Enforcement may only be permitted by the Nevada Legislature. .......... 6

II.    Cross-enforcement disregards ideals fundamental to the United States. ....... 14

    A.    The Tenth Amendment shows the Constitution's disapproval of an approach that approves of cross-enforcement without legislative guidance. ................................................................... 14

    B.    Cross-enforcement invites government actors to invade community standards or expectations of privacy recognized in sovereign states. ....... 17

    C.    Cross-Enforcement without legislative authority welcomes impermissible judicial legislation and, worse, the effective amendment of laws by executive branch actors. .............................................. 19

CONCLUSION ................................................................................ 21

CERTIFICATE OF COMPLIANCE .................................................. 23

CERTIFICATE OF SERVICE .......................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## Constitutional Provisions

U.S. Const. amend. X ................................................................. 6, 13

## Cases, United States Supreme Court

*BedRoc Limited, LLC v. United States,*
    547 U.S. 176 (2004) ................................................................ 9
*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ............................................................... 13
*Nat' Fed'n of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012) ............................................................... 13
*New State Ice Co. v. Liebmann,*
    285 U.S. 262 (1932) ................................................................. 4
*New York v. United States,*
    505 U.S. 144 (1992) ............................................................. 6, 14
*United States v. Lopez,*
    514 U.S. 549 (1995) ................................................................. 6
*United States v. Morrison,*
    529 U.S. 598 (2000) ................................................................. 6

## Cases, Federal Courts of Appeals

*Gonzalez v. City of Peoria,*
    722 F.2d 468 (9th Cir. 1983) ................................................ 4-5, 7
*Hodgers-Durgin v. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999) ................................................... 7
*Santos v. Frederick Cty. Bd. of Comm'rs,*
    725 F.3d 451 (4th Cir. 2013) ..................................................... 7
*United States v. Bowdach,*
    561 F.2d 1160 (5th Cir. 1977) ................................................... 7

**Cases, Nevada Supreme Court**

*Galloway v. Truesdell,*
    83 Nev. 13, 422 P.2d 237 (1967) ............................................. 3
*Haney v. State,*
    124 Nev. 408, 185 P.3d 350 (2004) ........................................ 9
*Hobbs v. State,*
    127 Nev. 234, 251 P.3d 177 (2011) ........................................ 9
*Sheriff, Washoe County v. Smith,*
    91 Nev. 729, 542 P.2d 440 (1975) ........................................ 10
*State v. Lloyd,*
    129 Nev. 739, 312 P.3d 467 (2013) ........................................ 2
*Platte River Insurance Co. v. Jackson,*
    137 Nev. 773, 500 P.3d 1257 (2021) ...................................... 8

**Cases, other jurisdictions**

*Commonwealth v. Craan,*
    13 N.E.3d 569 (Mass. 2014) .................................................. 8

**Statutes**

NRS 171.1223 ............................................................................. 8
NRS 171.124 ........................................................................... 9-10
NRS 289.190 ............................................................................. 8
NRS 289.230 ............................................................................. 8
NRS 289.330 ............................................................................. 8
NRS 289.470 ............................................................................. 8
NRS 391.281 ........................................................................... 11
NRS 391.282 ........................................................................... 10

**Other Authorities**

Akhil R. Amar, *Of Sovereignty and Federalism,*
    96 Yale L.J. 1425 (1987) ...................................................... 13
Joshua M. Divine, *Statutory Federalism and Criminal Law,*

iv

106 Va. L. Rev. 127, 165 (2020) ........................................................ 6

Orin Kerr, *Cross-Enforcement and the Fourth Amendment*,
132 Harvard L. Rev. 471 (2018) ..................................................... 8

Michael W. McConnell, *Federalism: Evaluating the Founders' Design*,
54 Univ. Chi. L. Rev. 1484 (1987) ................................................ 13

Deborah J. Merritt, *The Guarantee Clause and State Autonomy:
Federalism for a Third Century*,
88 Columbia L. Rev. 1 (1988) ....................................................... 13

Charles Warren, *Federal Criminal Laws and the State Courts*,
38 Harv. L. Rev. 545 (1925) ........................................................... 6

Minutes, Joint Meeting of Senate Committee on Education
and the Assembly Committee on Education, 80th session,
March 4, 2019, p. 13 ............................................................... 11-12

## <u>INTEREST OF AMICUS CURIAE</u>

Amici curiae respectfully submit this brief in support of Defendant-Appellee Triston Steinman's petition for panel rehearing or rehearing en banc.[1] Nevada Lawyers for Criminal Justice ("NACJ") are a not-for-profit organization of criminal defense lawyers in Nevada within the geographic scope of the United States Court of Appeals for the Ninth Circuit. NACJ has an interest in this case because our members represent individuals in State criminal proceedings who suffer infringement of Constitutional rights. We have active criminal cases within Nevada courts that will be directly impacted by this Circuit's decision.

Additionally, the American Civil Liberties Union is a nationwide, nonprofit, nonpartisan organization with nearly two million members and supporters dedicated to the principles of liberty and equality embodied in the federal and state constitutions. The American Civil Liberties Union of Nevada (ACLUNV) is the ACLU's state affiliate with

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amici made a monetary contribution to its preparation or submission. Amici are filing a contemporaneous motion seeking leave to file this brief. The Federal Defenders of Nevada are excluded from this group of amici for the purposes of this brief.

over 7,000 members dedicated to protecting and defending the civil rights and civil liberties granted to Nevadans by both the Nevada and United States Constitutions. Considering the threat unfettered cross-enforcement by state law enforcement has to Nevadan state sovereignty and the civil liberties of Nevadans, ACLUNV has a particular interest in the reconsideration of the panel's opinion in this matter.

The petition for rehearing involves a question concerning the ability of State officers to exercise authority outside of their statutory grant of power. As the practitioners that stand most likely to engage with the intersection of cross-enforcement and its effects, NACJ and ACLUNV respectfully request this Court consider our perspective.

## <u>INTRODUCTION AND SUMMARY OF THE ARGUEMENT</u>

This case is about a Nevada Highway Patrol Officer's jurisdictional authority to investigate Defendant-Appellee Triston Steinman's potential violation of federal law. The Highway Patrol Officer, Trooper Boyer, stopped Steinman based on Nevada traffic laws but investigated Steinman for the possession of ammunition by a convicted person, something that Nevada law does not prohibit.

In addition, Nevada is a positive jurisdiction state, meaning that entities formed by the legislature only have the power and authority expressly granted to it via statute. *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) *citing People ex rel. Wood v. Draper*, 1 E.P. Smith 532, 544 (N.Y. Ct. Of App. Jan. 1, 1857). Nevada law does not extend a state officer's jurisdiction or authority to investigate or arrest federal offenses. Nevada law expressly provides for points of cross-jurisdictional enforcement, including the ability of federal agents to enforce Nevada laws; however, it does not grant the authority utilized by Trooper Boyer here. Thus, aside from the numerous Fourth Amendment issues present, and regardless of the merit of those issues, this case presents the question

3

of cross-enforcement of the Fourth Amendment. With that comes issues involving sovereignty, privacy, and the Tenth Amendment.

Finally, the issue of cross-enforcement is not necessary to the resolution of this appeal. This Court should grant reconsideration and address Appellee's claims without taking an unnecessary dive into cross-enforcement and its related sovereignty implications. However, if the en banc court wishes to reconsider the cross-enforcement issue, the panel's decision was incorrect and problematic for the reasons discussed in this amicus.

## **ARGUMENT**

Nevada is a State unlike any other. It is no coincidence that Nevada is also the entertainment capital of the world, and a tourism hot spot rivaled by few cities on the planet. From Sin City to Lake Tahoe, Nevada is unique in both its beauty and its legislation. Nevada is proud to do things differently than other States and different from its federal counterparts. Tourists come to Nevada to gamble, smoke a Schedule I controlled substance, and maybe even purchase a night's company in a lesser-populated county. These things are legal here, but illegal across borders in every direction. Some of them remain illegal under federal law.

Cross-enforcement of federal laws by State actors threatens "one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory[.]" *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandies, J., dissenting). This happy incident is frustrated if a single officer on a single day can decide, on his or her own whim, to enforce a law of the United States which has been specifically rejected by the legislature of a "courageous state" like Nevada. *Galloway*, 83 Nev. 13, 20, 422 P.2d at 242 ("[T]he executive power extends to carrying out and enforcing the laws enacted by the Legislature. Except where there is a constitutional mandate or limitation, the Legislature may state which actions the executive shall or shall not perform.").

Such unfettered cross-enforcement is unlawful for two reasons. In States like Nevada, where its Legislature affirmatively conveys the power to act to law enforcement agencies, the United States may not fill in gaps between those affirmative grants of power with assumed power. The State must convey that power to its own actor. Second, unchecked cross-enforcement significantly weakens fundamental ideas of federalism, the Tenth Amendment, Fourth Amendment expectations of

5

privacy, and separation of powers. The general rule announced in *Gonzalez v. City of Peoria* flies in the face of these concepts, and the panel here was incorrect to summarily apply that general rule to these facts.

## I.  Cross-Enforcement may only be permitted by the Nevada Legislature.

The general police power rests with the States, not the federal government. U.S. Const. amend. X; *Nat' Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 535 (2012) ("In our federal system, the National Government possesses only limited powers; the States and the People retain the remainder."). Cross-enforcement undercuts that ideal.

At the inception of the United States, the power to create and enforce criminal laws laid almost exclusively with the States. *See* Charles Warren, *Federal Criminal Laws and the State Courts*, 38 Harv. L. Rev. 545 (1925) (explaining that the Framers advocated for the States to have primary control over criminal cases); Joshua M. Divine, *Statutory Federalism and Criminal La*w, 106 Va. L. Rev. 127, 165 (2020) (arguing that Congress rarely enacted criminal law statutes before the Civil War).

The Supreme Court has strongly rejected the idea of a "general federal police power" at the expense of state sovereignty over crime control. *United States v. Lopez*, 514 U.S. 549, 564 (1995) (finding a

6

congressional statute seeking to criminalize gun possession near public schools to be unconstitutional because the statute lacked a connection to interstate commerce and the Commerce Clause). Federal overreach "in areas such as criminal law enforcement, . . . where States historically have been sovereign[,]" would subject all citizens to the whims of the federal government. *Id.* at 564; *see also New York v. United States*, 505 U.S. 144, 181 (1992) ("State sovereignty is not just an end in itself: 'Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power.'") (internal citations omitted); *United States v. Morrison*, 529 U.S. 598, 614, 627 (2000) (finding a provision of the Violence Against Women Act unconstitutional because police power was denied to the National Government and reversed for the States, requiring any remedy for victims of violence to come from State systems).

Nevada exercises its sovereign powers when the State Legislature conveys powers to the State's law enforcement officers. Nevada's sovereign powers have not extended the same authority to its actors with respect to the investigation or arrest pursuant to federal offenses. Without a specific grant of authority, a state police officer may not act under the color of law. *See Santos v. Frederick Cty. Bd. of Comm'rs*, 725

7

F.3d 451, 464 (4th Cir. 2013) ("Local law enforcement officials may detain or arrest an individual for criminal violations of federal immigration law without running afoul of the Fourth Amendment so long as the seizure [is support by cause] and is *authorized by state law*."); *Gonzalez v. City of Peoria*, 722 F.2d 468, 471 (9th Cir. 1983) (overruled on other grounds by *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir. 1999) (en banc) (state officers' arrest of 11 people for federal immigration claims was lawful only because state law authorized officers to make arrests for suspected misdemeanors); *United States v. Bowdach*, 561 F.2d 1160, 1168 (5th Cir. 1977) (state officers' arrest of defendant for federal bond violation upheld because state law permitted officers to arrest when they had a reasonable belief that that person committed a felony); *Commonwealth v. Craan*, 13 N.E.3d 569 (Mass. 2014) (State officer's search of a car following discovery of legal amount of marijuana in that officer's state could not be justified through federal prohibition against marijuana). Legislative grants of authority are vital, and those grants are a common touchstone. *See generally* Orin Kerr, *Cross-Enforcement and the Fourth Amendment*, 132 Harvard L. Rev. 471, 478-79 (2018).

8

For example, Nevada statutes contain numerous examples of the Nevada Legislature conveying authority to executive branch employees and officers as well as controlling interactions between state and federal governments. *E.g.* NRS 289.470 (designating classes of peace officer, each unique in powers and duties); NRS 289.330 (defining jurisdiction for railroad police officers); NRS 289.230 (defining under what circumstances a California officer may retake a prisoner from Nevada); NRS 171.1223 (identifying "limited jurisdiction" officers and "primary law enforcement officers"); NRS 289.190 (defining jurisdiction for school police officers); NRS 211.060 (requiring the United States contract with and pay local sheriffs to house federal inmates). Despite all its time spent defining the authority of its law enforcement actors, the Nevada Legislature specifically sought to not grant its state actors authority to investigate federal crimes. *See Ramsey v. City of N. Las Vegas*, 133 Nev. 96, 102, 392 P.3d 614, 619 (2017) ("[T]he expression of one thing is the exclusion of another, long adhered to in this state, instructs us to view the failure to acknowledge any other existing method of removal as intent to allow no other method."). That omission is intentional. *Platte River Insurance Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 ("[A]

9

canon of statutory interpretation provides that a legislature's omission of language included elsewhere in the statute signifies an intent to exclude such language[.]") (citing *Rural Telephone Co. v. Public Utilities Comm.*, 133 Nev. 387 (2017)); *see also BedRoc Limited, LLC v. United States*, 547 U.S. 176, 183 (2004) (the courts are to presume that "the legislature says in a statute what it means and means in a statute what it says there"); *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011) ("In interpreting a statute, we begin with the test of the statute to determine its plain meaning and apply 'clear and unambiguous' language as written. In doing so we avoid statutory interpretation that renders language meaningless or superfluous."); *see also Haney v. State*, 124 Nev. 408, 411-12, 185 P.3d 350, 353 (2004) (requiring courts presume that all words, phrases, and provisions of a statute have meaning).

Nevada lawmakers confronted the question of cross-enforcement in other statutes, and the Legislature either prohibited cross-enforcement or permitted only a form of "cross-enforcement down." For example, federal agents are permitted to arrest for "public offenses," "felonies or gross misdemeanors in the [officer's] presence," and other generic scenarios. NRS 171.124. The Nevada Legislature, however, did not want

10

to permit blanket cross-enforcement because the Legislature curbed the federal agents' authority under Chapter 453—drug offenses—providing that an agent of the DEA "may only make an arrest" pursuant to NRS 171.124 for violations of NRS 453." NRS 171.124(3). To assume the Nevada Legislature confined power in these specific instances to permit unfettered power in other, related instances is unreasonable. *See Sheriff, Washoe County v. Smith*, 91 Nev. 729, 733, 542 P.2d 440, 443 (1975) ("[A] fundamental rule of statutory interpretation is that the unreasonableness of the result produced by one among alternative possible interpretation of a statute is reason for rejecting that interpretation in favor of another that would produce a reasonable result); *see also Galloway*, 422 P.2d at 246 ("Every positive direction contains an implication against anything contrary to it which would frustrate or disappoint the purpose of that provision.").

Additionally, even within the State's own police forces, the Nevada Legislature has specifically prohibited cross-enforcement. NRS 391.282 specifically restricts when a school police officer can act within the community to investigate a crime. Although school police officers are peace officers with the same power to arrest for any crime, that power is

11

limited to physical boundaries and jurisdictions defined by the Legislature. In the case of NRS 391.282, school police may only act under the statute on school property, buildings, and facilities, extending beyond only when the officer is in hot pursuit or for a crime that originated within the jurisdiction.

Moreover, during the March 4, 2019, session to amend NRS 391.282, Assembly Woman Brittney Miller specifically asked Chief of Police for Clark County School District Police, James Ketsaa, about the elevation of the school police from category II to category I regarding jurisdiction and cross-enforcement. This exchange shows Nevada lawmakers are aware of cross-enforcement and specifically excised legislative power to exclude it:

> **Assembly Woman Miller**: "Regarding the requirement for campus police officers to be Category I rather than Category II, I understand the concept of being able to continue an investigation at a school site or a student's home, but when it comes to traffic violations, is that just in the immediate vicinity of the school? Can you define that?"
>
> **Mr. Ketsaa**: "The rationale for that is to give us a 24-hour provision for instances when there are sporting events and dances going on after hours. At those times, the school zones are not in effect, so there would be no reason to do a traffic stop. However, we have officers on patrol around the clock, so if there was a vehicle driving around the school with its lights off and we got an alarm at the at school, this change in statute

would give the officer the ability to stop that vehicle and see if they have anything to do with, say a possible burglary. During sporting events after school hours and when kids are coming home from field trips, there can be reckless driving and traffic hazards and this gives us the ability to intervene. It has nothing to do with anything beyond that."

**Assembly Woman Miller**: "When you say burglary, do you mean on school property or in the neighborhood."

**Mr. Ketsaa**: "Only on school property."

Hearing on SB 89, Joint Meeting of Senate Committee on Education and the Assembly Committee on Education, 80th Leg. Reg. Sess. Nev. at 13 (March 4, 2019).

With that, the shortcoming in this case is clear. The Nevada Legislature has considered cross-enforcement and rejected it. That omission is intentional, and that intentional omission must carry some value. To permit a generic approach to cross-enforcement without considering the source jurisdiction's approach to granting executive power is to render significant Nevada statutes and intentional omissions meaningless.

NACJ respectfully submits that this point is dispositive to the Court's question on Steinman's appeal, and it is sufficient to warrant both reconsideration and overruling of the underlying panel's decision.

13

## II.  Cross-enforcement disregards ideals fundamental to the United States.

The implications of blanket cross-enforcement cut against state sovereignty, the Tenth Amendment, legislatively acknowledged expectations of privacy, and separations of power. In short, cross-enforcement deputizes state actors to enforce federal law without guidance, even when it conflicts with duly passed state laws. Under that regime, States have no incentive or reason to legislate as a sovereign entity; these United States will migrate towards to a one uniform, national entity in contravention to state sovereignty.

### A.  The Tenth Amendment shows the Constitution's disapproval of an approach that approves of cross-enforcement without legislative guidance.

The Constitution and founding principles of federalism mandate the State's preference on cross-enforcement to be followed.

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "The States thus can and do perform many of the vital functions of modern government—punishing street crime," among other things. *Nat' Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 535 (2012). In other words, the states possess "this general

14

power of governing." *Id.* at 535-36. "As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). That bifurcation is purposeful and desirable; authors thoroughly documented the benefits of a separate federal system. *E.g.* Deborah J. Merritt, *The Guarantee Clause and State Autonomy: Federalism for a Third Century*, 88 Columbia L. Rev. 1 (1988); Michael W. McConnell, *Federalism: Evaluating the Founders' Design*, 54 Univ. Chi. L. Rev. 1484 (1987); Akhil R. Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425 (1987).

Similarly, the reverse side of the federalism coin disfavors "[a]ny federal legislation that enlists state government as agents to serve federal regulatory purposes." *New York v. United States*, 505 U.S. 144, 178 (1992); *see also* Amy M. Pepke, *The Brady Bill: Surviving the Tenth Amendment*, Vanderbilt L. Rev. 1803, 1820 n.135 (1995).

Cross-enforcement violates the spirit of the Tenth Amendment and related anticommandeering principles discussed in *New York v. United States*. Cross-enforcement is an intrusion on the State's independence and autonomy. *See Printz v. United States*, 521 U.S. 898, 928 (1997) ("It

15

is no more compatible with this independence and autonomy that their officers be 'dragooned' into administering federal law, than it would be compatible with the independence and autonomy of the United States that its officers be impressed into service for the execution of state laws.") (internal citations omitted); *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 473-74 (2018) ("[I]f a State imposes regulations only because it has been commanded to do so by Congress, responsibility is blurred.").

While cross-enforcement of the type at issue here is less a command than an invitation, the consequence is still damaging to our federal system. It still amounts to federal intervention into the substantive law of the States. That is, cross-enforcement deprives voters of their democratic right to choose the laws they live under. In some cases, it may render pointless a legislature's law because its citizens remain exposed to criminal penalties despite their elected leaders' decision to democratically decriminalize the conduct.

Cross-enforcement should not be lightly permitted, especially not on facts that involve a unique state and a different regulatory scheme. The sovereignty of states everywhere is jeopardized by unfettered cross-

16

enforcement, and the Constitution—by its text—disfavors a judicial look in the other direction.

> ### B. Cross-enforcement invites government actors to invade community standards or expectations of privacy recognized in sovereign states.

As this case demonstrates, cross-enforcement enables more opportunities for state actors to infringe on Nevadans' Constitutional rights, including the potential for invasion of rights and privacy interests recognized by Nevada's own legislature.

The Constitution, through the interpretation of other amendments, is sensitive to the community standards and local opinions. First, the Fourth Amendment itself turns on expectations of privacy and a society's willingness to recognize that privacy interest. *See Osburn v. State*, 118 Nev. 323, 327 (2002) ("[A] reasonable expectation of privacy . . . requires both a subjective and an objective expectation of privacy[.]"); *see also Katz v. United States*, 389 U.S. 347 (1967). Other Constitutional ideals look specifically to the relevant locality for its standards of decency before deciding whether Constitutional protections apply. *Miller v. California*, 413 U.S. 15, 32-34 (2004). And relevant here, the laws and ordinances

passed in a community reflect the interests and tolerances of that community.

One recognized community interest can be tracked in the legalization of marijuana. Nevada reduced marijuana possession from its felony status in 2001. NRS 453.336 (2001) (as amended by A.B. 453). Then, Nevada went a step further, legalizing marijuana for recreational use in 2016. Notably, Nevada took that step by Constitutional initiative, not a statutory amendment. Then, in 2021, Nevada further recognized an interest in marijuana by permitting consumption lounges. NRS 678A.087. As the Supreme Court discussed in *Katz* and *Miller*, the Constitution is sensitive to interests like this that evolve in individual communities.

The panel's decision is anything but sensitive to community values. Under the panel's decision, an officer with the Las Vegas Metropolitan Police Department is free to walk into one of these consumption lounges, detain every person on suspicion of a federal offense, perform associated searches, and otherwise invade the rights of those Nevadans guilty of just doing what their communities have authorized.

Cross-enforcement stands to stunt those recognized and developing State interests. It threatens the identity of states and their internal localities despite the Constitution's sensitivity towards those interests.

### C. Cross-Enforcement without legislative authority welcomes impermissible judicial legislation and, worse, the effective amendment of laws by executive branch actors.

Cross-enforcement creates a separation of powers problem, giving judges and police officers the practical power to legislate. Put another way, those non-legislative actors have the power to choose which laws—state or federal—will be operative on any given day. *See Galloway*, 422 P.2d at 242 ("[T]he separation of powers; the independence of one branch from the others; the requirement that one department cannot exercise the powers of the other two is fundamental in our system of government.").

In a scenario where law enforcement can decide, without guidance, to investigate federal law—especially when that law conflicts with State law—State actors "play[ ] pinball with a statute's interpretation," meaning "fair notice cannot be said to exist." *Cargill v. Garland*, 57 F.4th 447, 468 (5th Cir. 2023) (quoting *Aposhian v. Wilkinson*, 989 F.3d 890 (10th Cir. 2021) (Tymkovich, C.J., dissenting) in the rule interpretation

19

context). Individual citizens cannot know whether their conduct will be treated as lawful, consistent with Nevada laws, or unlawful under the federal scheme. Due process issues aside, this gives the individual police officer the power to effectively legislate. It gives an individual judge the power to sanction conduct rejected by the judge's state's legislature.

Interjecting a member of another branch of government between the written laws and the enforcement of the laws is a separation of powers violation of the realest kind. With the authority to permit criminal prosecutions based on evidence seized after cross-enforcement, the Courts would be able to announce the immateriality of laws passed by the legislature that conflict with federal law. More concerning is what happened in this case. A police officer decided the legislature's refusal to criminalize ammunition possession did not matter. Consider similar facts involving marijuana possession. In that case, the officer would override the will of the people of Nevada and Nevada's legislature to pursue a criminal investigation against a Nevadan.

Taking that path makes our legislature a mere advisor to law enforcement, permitting law enforcement to be the end-of-the-road and unilateral decider with respect to the laws and their applicability.

## CONCLUSION

Cross-enforcement is, at minimum, a state question. The panel here did not treat this question as a state question. In fact, it decided the question unnecessarily a created a seismic shift in State sovereignty and legislative authority. This Court should reconsider the panel's decision and give cross-enforcement its due consideration before ignoring the will of Nevada's Legislature and, in turn, welcoming problems touching on federalism and separation of powers.

Every state, especially states like Nevada that depend on the uniquity of its own character, will struggle under a regime that favors coast-to-coast uniformity over sovereignty and individual liberties. NACJ and ACLUNV asks only that our Legislature decide whether a Nevada officer can investigate federal law instead of assuming that result.

The panel's standing opinion prevents that act of sovereignty, and it does so unnecessarily. NACJ and ACLUNV respectfully request that this Court consider Amici's perspective and rehear these issues.

///

///

///

Respectfully submitted,

_/s/ Christopher M. Peterson_
Christopher M. Peterson
Nevada Bar No.: 13932
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 830-9205
Email: peterson@aclunv.org
_Counsel for ACLUNV_

_/s/ Dallas R. Anselmo_
Dallas Robert Anselmo
Nev. Bar No. #15863
309 S. Third Street
Las Vegas, NV 89101
Telephone: (702)455-4685
_Counsel for NACJ_

_/s/ Katherine Currie-Diamond_
Katherine Currie-Diamond
Nev. Bar No. #13676
309 S. Third Street
Las Vegas, NV 89101
Telephone: (702)455-4685
_Counsel for NACJ_

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that this *amicus* brief complies with Federal Rule of Appellate Procedure 29(a)(5) and Ninth Circuit Rule 32-3(2) as it contains 4,068, excluding the portions exempted by Fed. R. App. P. 32(f).

The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.

Dated: June 24, 2025

　　　　　　　　　　　　　　　 */s/  Dallas R. Anselmo*
　　　　　　　　　　　　　　　Dallas R. Anselmo

　　　　　　　　　　　　　　　*Counsel for Amicus Curiae*
　　　　　　　　　　　　　　　*Nevada Attorneys for Criminal Justice*

23

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system. I further certify that service was accomplished on all parties via the Court's CM/ECF system.

Dated: June 24, 2025

_/s/  Dallas R. Anselmo_
Dallas R. Anselmo

_Counsel for Amicus Curiae_
_Nevada Attorneys for Criminal Justice_

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated              .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                       **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov