No. 23-1703

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

TRISTON HARRIS STEINMAN,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the District of Nevada
(Decided March 5, 2025, by Milan D. Smith, Jr., Patrick J. Bumatay,
Circuit Judges, and George H. Wu, District Judge)
_____

## BRIEF OF AMICI CURIAE NINTH CIRCUIT FEDERAL PUBLIC AND COMMUNITY DEFENDER OFFICES IN SUPPORT OF DEFENDANT-APPELLEE'S PETITION FOR REHEARING AND REAHEARING EN BANC

KASHA CASTILLO
Executive Director
DANIEL J. YADRON, JR.
Appellate Attorney
VINCENT BRUNKOW
Chief Appellate Attorney
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92102
(619) 234-8467
danny_yadron@fd.org

## TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Statement of Interest and Authority to File ........................................... 1

Introduction ............................................................................................. 2

Argument .................................................................................................. 4

I.    This Court need not decide whether unstated suspicions of federal law violations may retroactively justify a state officer's search. .......................................................................... 4

II.    In unnecessarily deciding whether state officers may arrest for federal crimes under the Supremacy Clause, the majority opinion contravened precedent and upended law enforcement. ................................................................................... 8

    A.    The majority disregards binding precedent that state law governs state officers' ability to enforce federal law. ...... 8

    B.    The majority opinion needlessly muddles already complex doctrine and undermines a state's control over its officers. ............................................................................ 12

        1.    Cross-enforcement of federal law is complex. ............ 12

        2.    The majority opinion allows state officers to ignore state law. .......................................................... 14

        3.    Multiple courts have held that state officers violate the Fourth Amendment if they arrest for conduct decriminalized under state law. ..................... 16

        4.    The Supreme Court has declined to resolve whether preemption concerns bar a state officer from prolonging a seizure because of suspicions of an "immigration crime." .............................................. 18

Conclusion ............................................................................................... 20

i

TABLE OF AUTHORITIES

## Cases

*Alexander v. Louisiana,*
    405 U.S. 625 (1972) ................................................................ 7

*Arizona v. United States,*
    567 U.S. 387 (2012) ......................................................... 9, 19

*Ashwander v. Tennessee Valley Auth.,*
    297 U.S. 288 (1936) ................................................................ 6

*Burton v. United States,*
    196 U.S. 283 (1905) ................................................................ 3

*Camreta v. Greene,*
    563 U.S. 692 (2011) ........................................................... 2, 3

*Christopher v. Harbury,*
    536 U.S. 403 (2002) ................................................................ 7

*Commonwealth v. Craan,*
    13 N.E.3d 569 (Mass. 2014) ............................................... 17

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022) ................................................................ 3

*Fendler v. Goldsmith,*
    728 F.2d 1181 (9th Cir. 1983) .............................................. 6

*Florida v. Jardines,*
    569 U.S. 1 (2013) ................................................................. 14

*Gambino v. United States,*
    275 U.S. 310 (1927) ............................................................. 14

*Gonzales v. City of Peoria,*
    722 F.2d 468 (9th Cir. 1983) ...................................... 3, 8, 10

*Hodgers-Durgin v. de la Vina,*
    199 F.3d 1037 (9th Cir. 1999) .............................................. 3

*Ker v. California,*
374 U.S. 23 (1963) ................................................ 3, 8, 10

*Leroy v. Great W. United Corp.,*
443 U.S. 173 (1979) .................................................... 7

*Liverpool, N.Y. & P.S.S. Co. v. Emigration Comm'rs,*
113 U.S. 33 (1885) ..................................................... 6

*Lyng v. Northwest Indian Cemetery Protective Assn.,*
485 U.S. 439 (1988) .................................................... 3

*Marsh v. United States,*
29 F.2d 172 (2d Cir. 1928) ............................................. 9

*Massachusetts v. Westcott,*
431 U.S. 322 (1977) .................................................... 7

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) (en banc) ................................ 12

*Miller v. United States,*
357 U.S. 301 (1958) .................................................... 9

*Newman v. Wengler,*
790 F.3d 876 (9th Cir. 2015) (per curiam) ............................. 11

*Pearson v. Callahan,*
555 U.S. 223 (2009) .................................................... 7

*Printz v. United States,*
521 U.S. 898 (1997) ............................................... 10, 15

*Rescue Army v. Mun. Ct. of Los Angeles,*
331 U.S. 549 (1947) .................................................... 7

*Robinson v. State,*
152 A.3d 661 (Md. 2017) ............................................... 18

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.,*
490 U.S. 477 (1989) ................................................... 11

*Rodriguez v. United States*,
575 U.S. 348 (2015) ........................................................... 4, 5

*Santa Clara Cnty. v. S. Pac. R. Co.*,
118 U.S. 394 (1886) ............................................................... 7

*Scott v. Harris*,
550 U.S. 372 (2007) ............................................................... 7

*Shaw v. Terhune*,
380 F.3d 473 (9th Cir. 2004) ............................................... 5

*Spector Motor Serv. v. McLaughlin*,
323 U.S. 101 (1944) ............................................................... 2

*Stevenson v. Lewis*,
384 F.3d 1069 (9th Cir. 2004) ............................................. 5

*Sweatt v. Painter*,
339 U.S. 629 (1950) ............................................................... 6

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*,
467 U.S. 138 (1984) ............................................................... 4

*United States* v. *Di Re*,
332 U.S. 581 (1948) ............................................................... 9

*United States v. Gray*,
772 F. App'x 565 (9th Cir. 2019) (unpublished) ................. 17

*United States v. Haskin*,
228 F.3d 151 (2d Cir. 2000) ................................................. 9

*United States v. Jones*,
438 F. Supp. 3d 1039 (N.D. Cal. 2020) ............................. 16

*United States v. Maffei*,
827 F. App'x 760 (9th Cir. 2020) (unpublished) ................. 17

*United States v. Malik*,
963 F.3d 1014 (9th Cir. 2020) ........................................... 12

iv

*United States v. Martinez,*
  811 F. App'x 396 (9th Cir. 2020) (unpublished) ...................................18

*United States v. Russell,*
  No. 2:23-CR-00142-TL, 2024 WL 5077221, (W.D. Wash. Dec. 11, 2024)
  (unpublished) ...................................................................................17

*United States v. Talley,*
  467 F. Supp. 3d 832 (N.D. Cal. 2020) .................................................17

*Upper Skagit Indian Tribe v. Lundgren,*
  584 U.S. 554 (2018) ..............................................................................4

*Virginia v. Moore,*
  553 U.S. 164 (2008) ............................................................................11

*Washington State Grange v. Washington State Republican Party,*
  552 U.S. 442 (2008) ..............................................................................6

*Whitehouse v. Illinois Cent. R. Co.,*
  349 U.S. 366 (1955) ............................................................................19

*Whren v. United States,*
  517 U.S. 806 (1996) ............................................................................14

## Statutes

Born-Alive Abortion Survivors Protection Act,
  S. 6, 119th Cong. (2025) ......................................................................13

Cal. Gov't Code § 7284.4(f) ......................................................................13

Cal. Gov't Code § 7284.6(a)(1) ................................................................13

Cal. Health & Safety Code § 11362.1(c) ..................................................16

Nev. Rev. Stat. § 171.123 ........................................................................10

## Other Authorities

4 Wayne R. LaFave, *Search & Seizure* (6th ed. 2024)..............................4

Aamer Madhani & Elliot Spagat, *Trump curbs immigration enforcement at farms, meatpacking plants, hotels and restaurants*, Associated Press (June 14, 2025, 1:29 PM) ........................................................ 15

Assistance by State and Local Police in Apprehending Illegal Aliens, 20 Op. O.L.C. 26 (1996) .................................................................. 10

Fed. R. App. P. 40(a)(2) ............................................................... 8

Orin S. Kerr, *Cross-Enforcement of the Fourth Amendment*, 132 Harv. L. Rev. 471 (2018) ...................................................... 11, 12

Orin S. Kerr, *The Questionable Objectivity of Fourth Amendment Law*, 99 Tex. L. Rev. 447 (2021) ............................................................. 14

### STATEMENT OF INTEREST AND AUTHORITY TO FILE

The Ninth Circuit Federal Public and Community Defenders represent indigent defendants in this Court. Those organizations have an interest in all federal criminal law issues.

Federal prosecutions often begin not with a raid by the Federal Bureau of Investigation but with a roadside stop by state and local law enforcement. Thus, amici and their clients have a critical concern about state and local law enforcement's authority to arrest, search, and seize based on suspicions of *federal* offenses.

Amici affirm that no publicly held corporation owns stock in them. No counsel for either party authored this brief in whole or in part. And no party, party's counsel, person, or other entity contributed money to preparing this brief. Both parties consent to this brief's filing.

## INTRODUCTION

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) (Frankfurter, J.). Thus "courts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

Amici weigh in here because the majority opinion flouts that doctrine. The panel had done enough to reverse the district court: It held, albeit incorrectly, that a state trooper did not unlawfully prolong the traffic stop of Triston Steinman. It also held, "without much difficulty," Op. 39, that probable cause to suspect a violation of Nevada law justified a warrantless search and seizure of Mr. Steinman's car. And finally, it held that it was irrelevant that the government waived any argument that an invalid warrant did not taint the search.

Yet the majority pressed on to a thornier (and unnecessary) question: whether the Constitution's Supremacy Clause permits federal prosecutors and courts to gin up suspicions of federal law violations to justify a state officer's warrantless search—even when objective evidence shows that the officer was enforcing state law, only. The result is a treatise on federalism, cross-jurisdictional enforcement, and retroactive justifications for searches. Yet it gives short shrift to

2

questions that puzzle courts and scholars—ignoring how the answers could upend enforcement of laws governing immigration, drugs, and social mores.

All of that might be defensible if "absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295 (1905). But as the majority does not dispute, it was not. Rather, the majority plowed ahead under the rationale that since it had to decide a Fourth Amendment question, why not decide them all? Op. 38–39.

But "[i]f it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring). Thus, rehearing is needed so this Court can honor the "longstanding principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta*, 563 U.S. at 705 (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 445 (1988)).

Rehearing is further needed because the majority opinion contravened another proposition long settled: State law must grant "affirmative authority to make arrests under those [federal] statutes." *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983) (citing *Ker v. California*, 374 U.S. 23, 37 (1963)), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). One recent law review article's doubts about that rule cannot give license to

3

contravene on-point precedent. And the majority opinion's rationale raises serious concerns about state sovereignty, commandeering, and preemption. Though the majority claims otherwise, its reasoning unleashes state officers to enforce all federal laws—even if state law expressly decriminalizes the conduct at issue and federal enforcement priorities discourage arrests.

Amici urge this Court to grant rehearing and decide the case on the only questions that need resolving. "That is work enough for the day." *Upper Skagit Indian Tribe v. Lundgren*, 584 U.S. 554, 561 (2018).

## ARGUMENT

### I.   This Court need not decide whether unstated suspicions of federal law violations may retroactively justify a state officer's search.

It is hard to overstate the extent to which the majority opinion disregards its "responsibility to avoid unnecessary constitutional adjudication." *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 158 (1984). At the outset, the simplest way to resolve this case is at the first juncture: hold that the trooper unconstitutionally prolonged the stop by inviting Mr. Steinman into his squad car and then rifling through his criminal record, apparently to see if the man *now sitting next to him* was dangerous. A respected—and neutral—treatise concludes that contravenes *Rodriguez v. United States*, 575 U.S. 348 (2015). *See* 4 Wayne R. LaFave, *Search & Seizure* § 9.3(c) (6th ed. 2024) ("[T]here should be a total prohibition . . . on use

of criminal history checks incident to traffic stops except when there also exists a reasonable suspicion of more serious criminal conduct."). This Court should do the same.[1]

But let us assume arguendo that the panel correctly decided that the trooper did not unlawfully prolong the stop. There was another door out: The government affirmatively waived any argument that an invalid warrant did not taint the search. *See* PFR-8–13. And even if this Court disagrees, that still does not put cross-enforcement of federal law on the table.

That is because once the panel then held, "without much difficulty," Op. 39, that the trooper had probable cause to suspect a violation of state law, the case was done. Anything else—much less ten pages of additional constitutional adjudication—was contrary to this Court's "obligation to avoid deciding constitutional questions needlessly." *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004); *see also Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

The majority opinion's justification for plowing ahead suggests a deep misunderstanding of the Court's role. It reasoned that "there is no

---

[1] The opinion also contravenes *Rodriguez* in acknowledging that officers may not add *de minimis* time to the stop without reasonable suspicion, Op. 14 (citing *Rodriguez*, 575 U.S. at 355–56), yet still holding that brief delays from non-traffic-related tasks are fine because "officers are not automatons required to work with the maximum possible efficiency." Op. 19. Short delays from inefficiencies are *de minimis* delays.

way to avoid deciding constitutional *issues*" because even limiting the inquiry to "a violation of Nevada state law . . . would still present a constitutional *question*." Op. 38 (emphases added). In other words, the majority opinion treats the presence of a *single* unavoidable constitutional question as a one-time buffet ticket to make all the doctrine that fits on one plate. It tellingly offers no citation for that maximalist proposition.

Even when courts must decide a constitutional question, "such decisions will be drawn as narrowly as possible." *Sweatt v. Painter*, 339 U.S. 629, 631 (1950). "[C]ourts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)); *see also Fendler v. Goldsmith*, 728 F.2d 1181, 1188 (9th Cir. 1983).

That is no new adage. The Supreme Court has taught it for at least 140 years. *See Liverpool, N.Y. & P.S.S. Co. v. Emigration Comm'rs*, 113 U.S. 33, 39 (1885) (holding that there is a duty "never to anticipate a question of constitutional law in advance of the necessity of deciding it"); *Ashwander*, 297 U.S. at 347 (surveying cases to conclude that "[t]he Court will not pass upon a constitutional question . . . if

6

there is also present some other ground upon which the case may be disposed of"). The Court has reaffirmed it repeatedly. *See, e.g.*, *Santa Clara Cnty. v. S. Pac. R. Co.*, 118 U.S. 394, 410 (1886) ("These questions belong to a class which this court should not decide, unless their determination is essential to the disposal of the case in which they arise."); *Rescue Army v. Mun. Ct. of Los Angeles*, 331 U.S. 549, 568 (1947) (holding that there is "a policy of strict necessity in disposing of constitutional issues"); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("avoiding decision of constitutional issues unnecessary to the decision of the case"); *Massachusetts v. Westcott*, 431 U.S. 322, 323 (1977) (describing the "longstanding principle of deciding constitutional questions only when necessary"); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 181 (1979) (holding that the Court "avoid[s] the unnecessary decision of novel constitutional questions"); *Pearson v. Callahan*, 555 U.S. 223, 241 (2009) (affirming the "older, wiser judicial counsel 'not to pass on questions of constitutionality . . . unless such adjudication is unavoidable'" (quoting *Scott v. Harris,* 550 U.S. 372, 388 (2007) (Breyer, J., concurring)); *Christopher v. Harbury*, 536 U.S. 403, 417 (2002) (holding that "the need to resolve such constitutional issues ought to be avoided where possible").

This limitation on judicial authority is not some "procedural" nicety. *Rescue Army*, 331 U.S. at 570. Rather, it is a rule "of substance . . . basic to the federal system and th[e] Court's appropriate

place within that structure." *Id.* Its foundation rests in the "delicacy" of judicial review and "the consideration due to the judgment of other repositories of constitutional power concerning the scope of their authority; the necessity, if government is to function constitutionally, for each to keep within its power." *Id.* at 571. This Court must honor that principle, too, and not reach the cross-enforcement question.

## II. In unnecessarily deciding whether state officers may arrest for federal crimes under the Supremacy Clause, the majority opinion contravened precedent and upended law enforcement.

This case presents a prime example of why courts should not decide constitutional questions unless they must. The majority opinion all but disregards binding precedents while muddling a complex area of doctrine with profound consequences for law enforcement and our society. *See* Fed. R. App. P. 40(a)(2).

### A. The majority disregards binding precedent that state law governs state officers' ability to enforce federal law.

The majority opinion conflicts with this Court's holding that the lawfulness of a state officer's arrest for a federal law violation turns, in part, on "whether state law grants [state] police the affirmative authority to make arrests under those [federal] statutes." *Gonzales*, 722 F.2d at 475 (citing *Ker,* 374 U.S. at 37). The Second Circuit also "look[s] to state law to determine the authority of the state officers to arrest and

seize evidence for violations of federal felonies." *United States v. Haskin*, 228 F.3d 151, 154 (2d Cir. 2000).

Those decisions rest on Supreme Court cases holding that in the "circumstance of an arrest for violation of federal law by state peace officers, . . . the lawfulness of the arrest without warrant is to be determined by reference to state law." *Miller v. United States*, 357 U.S. 301, 305 (1958) ((citing *United States* v. *Di Re*, 332 U.S. 581, 589 (1948)). The Supreme Court has indicated that *Di Re* and *Gonzales* remain good law. *See Arizona v. United States*, 567 U.S. 387, 415 (2012) (citing both).

The majority opinion selectively quotes an older Second Circuit case to suggest the law is otherwise. *See* Op. 31 (quoting *Marsh v. United States*, 29 F.2d 172, 174 (2d Cir. 1928) (L. Hand, J.)). In *Marsh*, the court grappled with whether a state trooper could search an automobile based on a suspected violation of the "National Prohibition Law." 29 F.2d at 173. What the majority failed to mention is that Judge Hand deemed this "a question only of state law." *Id*. He then delved into the weeds of New York statutes to determine if the search was lawful. *See id*. at 173–74. Thus, to the extent that state officers have a history of enforcing federal law, that history depends on state law granting them permission to do so.

The government's Office of Legal Counsel agrees. In 1996, it concluded that "*[s]ubject to the provisions of state law*, state and local

9

police may constitutionally detain or arrest aliens who have violated the criminal provisions of the Immigration and Naturalization Act." Assistance by State and Local Police in Apprehending Illegal Aliens, 20 Op. O.L.C. 26, 27 (1996) (emphasis added); *see also id.* at 29. That makes sense. "[A] healthy federalism depends upon the avoidance of needless conflict between state and federal courts." *Ker*, 374 U.S. at 31. Reference to state law thus prevents individual officers from violating the laws of their states and the federal government from commandeering state officers to post hoc enforce federal law. *See Printz v. United States*, 521 U.S. 898, 919 (1997).

The majority opinion made two analytical errors in failing to honor that precedent. First, the majority never actually answered whether state law authorized the search. It merely observed that Nevada law "*appears* to affirmatively authorize [the officer's] conduct," Op. 34 (emphasis added) (citing Nev. Rev. Stat. § 171.123(1)),[2] before *suggesting* that Nevada law is irrelevant, Op. 34 n.10. But this Court's decision in *Gonzales* requires it to determine what Nevada authorizes—not what it *appears* to authorize. To the extent that the majority

---

[2] Nevada law provides that "[a]ny peace officer may detain any person whom the officer encounters under circumstances which would reasonably indicate that the person has committed . . . a crime." § 171.123(1). *Gonzales* teaches that state judicial decisions answer whether a statute permits federal enforcement. *See* 722 F.2d at 476. But the majority offered no Nevada decision showing that § 171.123(1) permits state officers to arrest and search for federal law violations.

10

opinion deemed those waters too murky, that is evidence that diving into this issue is ill-advised.

The majority justified its disregard for *Gonzales* with another error. It claimed that "the Supreme Court has moved away from th[e] rule" that state law affects whether state officers complied with the Fourth Amendment. Op. 38 (citing Orin S. Kerr, *Cross-Enforcement of the Fourth Amendment*, 132 Harv. L. Rev. 471, 514–19 (2018); *Virginia v. Moore*, 553 U.S. 164, 172–73 (2008)). That is at least debatable. As the majority acknowledged, *Moore* is not "determinative."[3] Op. 32.

But even if the majority opinion were right, lower courts cannot ignore controlling precedents that have "direct application" to a case. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). That is because the Supreme Court alone "retains 'the prerogative of overruling its own decisions.'" *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam) (quoting *Rodriguez de Quijas,* 490 U.S. at 484). Thus, this Court cannot "engage in anticipatory overruling of Supreme Court precedent." *Id.*

---

[3] In *Moore*, Virginia officers arrested the defendant for driving without a license. 553 U.S. at 167. That was a crime under Virginia law, but not an *arrestable* one. *Id.* The Court held that did not alter the permissibility of a search incident to arrest. *Id.* at 178. But that does not necessarily resolve if state officers, consistent with the Fourth Amendment, may arrest for conduct that *is not an offense* under the laws they have jurisdiction to enforce.

The majority did not even attempt to claim that "intervening Supreme Court authority is clearly irreconcilable with . . . prior circuit authority." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). It simply could not resist a meaty constitutional issue when it was obligated to wait.

### B. The majority opinion needlessly muddles already complex doctrine and undermines a state's control over its officers.

That brings us to our final point: Even if the majority opinion permissibly reached the cross-enforcement issue, and even if it did not contravene binding precedent, rehearing is needed. That is because the majority's rationale muddles a divisive area of doctrine in ways that will have profound implications for the Nation's federal structure. This Court repeatedly has avoided resolving the extent to which federal law can justify a state officer's arrest even when state law permits the at-issue conduct. *See, e.g.*, *United States v. Malik*, 963 F.3d 1014, 1016 n.1 (9th Cir. 2020). This was not the case to discontinue that trend.

### 1. Cross-enforcement of federal law is complex.

For one, the question does not have simple answers. Indeed, "[w]hen state officers look to federal criminal law to justify searches or seizures, lower courts have adopted *five different standards*." Kerr, *supra*, at 476 (emphasis added). The panel did not grapple with any of those alternative approaches.

12

That courts and thinkers have reached different answers about cross-enforcement makes sense: It requires balancing values key to the Nation's character such as state sovereignty, federal supremacy, commandeering, and preemption. This Court's own effort must be careful and considered, particularly in an era when many states within its jurisdiction disagree with the federal government on what constitutes a crime.

For instance, California does not let its officers "investigate, interrogate, detain, detect, or arrest persons," Cal. Gov't Code § 7284.6(a)(1), for violation of "any federal criminal immigration law that penalizes a person's presence in, entry, or reentry to, or employment in, the United States," *id.* § 7284.4(f). Nevada permits prostitution.[4] Multiple states have decriminalized possession of marijuana.[5] More examples are bound to exist, now or in the future. *See, e.g.*, Born-Alive Abortion Survivors Protection Act, S. 6, 119th Cong. (2025).

Further complicating matters is that all objective evidence here shows that the state trooper acted with the purpose to enforce *state* law.

---

[4] Michelle Rindels, *Indy Explains: How legal prostitution works in Nevada*, The Nev. Independent (May 27th, 2018, 2:10 AM), https://thenevadaindependent.com/article/the-indy-explains-how-legal-prostitution-works-in-nevada.

[5] *Decriminalization*, NORML, https://norml.org/laws/decriminalization/ (last visited June 16, 2025).

13

Op. 37. Yet the majority opinion did not grapple with the Supreme Court's recognition that *objective* evidence of an officer's "purpose" can bear on the officer's power to conduct a search. *Florida v. Jardines*, 569 U.S. 1, 10 (2013). Indeed, Professor Kerr has documented numerous instances following *Wren v. United States,* 517 U.S. 806 (1996), in which an officer's intent still controlled the Fourth-Amendment analysis. Orin S. Kerr, *The Questionable Objectivity of Fourth Amendment Law*, 99 Tex. L. Rev. 447, 452–61 (2021). Such inquiries work naturally with cross-enforcement cases. In the past, courts would assess if a state officer intended to enforce state or federal law as part of assessing an arrest's reasonableness. *See, e.g.*, *Gambino v. United States*, 275 U.S. 310, 317 (1927).

> **2.    The majority opinion allows state officers to ignore state law.**

Suppose a California Highway Patrol officer makes a traffic stop for speeding in the Imperial Valley. The CHP officer walks up to the vehicle and decides that the driver and his passengers are "Latino." The driver says they are returning from a shift at one of the many nearby farms. But now suppose the officer suspects that the vehicle's occupants are not in the country legally. Under the majority's reasoning, the officer could prolong the stop, harass the passengers about their immigration status, and even send the case to federal prosecutors.

14

It would not matter that the officer violated California law, orders
from his supervisors, or even federal guidance not to target agricultural
workers for immigration enforcement.[6] In effect, the majority would
make a state legislature's will subject to the whims of rogue state
officers and federal prosecution authorities. History teaches better. *Cf.*
*Printz*, 521 U.S. at 919 ("The Framers' experience under the Articles of
Confederation had persuaded them that using the States as the
instruments of federal governance was both ineffectual and provocative
of federal-state conflict.").

The majority opinion brushed those implications aside by arguing
that is not *this* case. Op. 32 n.10 (claiming that it does not decide
"whether it is relevant that state law prohibits arrest, search, or seizure
based on the federally illegal conduct"). Its reasoning says otherwise.
That is because the majority opinion rests not on Nevada law—as
precedent requires—but the U.S. Constitution's Supremacy Clause and
the proposition that the Fourth Amendment must authorize the same
officer conduct in every jurisdiction. Op. 31–32. But if that is so—and to
be clear, it is not—then state law can *never* affect the lawfulness of a
search in federal court. It would not matter if state law also

---

[6] Aamer Madhani & Elliot Spagat, *Trump curbs immigration
enforcement at farms, meatpacking plants, hotels and restaurants*,
Associated Press (June 14, 2025, 1:29 PM),
https://apnews.com/article/trump-immigration-arrests-pause-hotels-
restaurants-farms-aa8f503a8d6d797021a70601e6a1d918.

criminalizes the conduct, is silent, or expressly decriminalizes the conduct. If the Supremacy Clause authorizes the search, the Supremacy Clause always wins.

Respectfully, the record and briefing here did not permit the majority to make such a sweeping suggestion that could upend law enforcement in the Ninth Circuit. As explained below, it undermines decisions from several prominent district courts, contravenes the decision of at least one state court of last resort, and ignores a complex preemption question that the Supreme Court has declined to resolve.

### 3. Multiple courts have held that state officers violate the Fourth Amendment if they arrest for conduct decriminalized under state law.

As the majority recognized, several courts within and outside of the Ninth Circuit have held that state officers cannot—consistent with the Fourth Amendment—search or seize for federal law violations when state law expressly decriminalizes the underlying conduct. As mentioned, California "explicitly provides that '[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section *are not contraband* nor subject to seizure, *and no conduct lawful by this section shall constitute the basis for detention, search or arrest.*'" *United States v. Jones*, 438 F. Supp. 3d 1039, 1054 (N.D. Cal. 2020) (alterations in original) (quoting Cal. Health & Safety Code § 11362.1(c)). Thus, multiple federal courts in the Golden State have held that "the smell of marijuana does not itself provide probable cause

16

or reasonable suspicion to believe a vehicle contains contraband and search it," even in federal suppression proceedings. *United States v. Talley*, 467 F. Supp. 3d 832, 836–37 (N.D. Cal. 2020); *see also Jones*, 438 F. Supp. 3d at 1054. That is because

> to hold otherwise would allow officers to disregard entirely the California legislature's directive . . . . Indeed, it would lead to the paradoxical result of allowing state law enforcement officers to defy the state laws they are entrusted with upholding so that they might enforce federal laws which they cannot be compelled to enforce. Moreover, practically speaking, to permit this end-run around California's legalization scheme would grant state law enforcement officers carte blanche to disregard the Fourth Amendment rights of large numbers of California residents engaging in activity the state has deemed lawful.

*Talley*, 467 F. Supp. 3d at 837 (citations omitted).

A federal court in Washington reached a similar conclusion after Washington passed a similar law. *United States v. Russell*, No. 2:23-CR-00142-TL, 2024 WL 5077221, at *7 (W.D. Wash. Dec. 11, 2024) (unpublished). Massachusetts's Supreme Judicial Court did the same, relying in part on this Court's decision in *Gonzales. See Commonwealth v. Craan*, 13 N.E.3d 569, 577–78 (Mass. 2014). This Court repeatedly has declined to address the matter. *See United States v. Gray*, 772 F. App'x 565, 567 n.2 (9th Cir. 2019) (unpublished); *United States v. Maffei*, 827 F. App'x 760, 761 (9th Cir. 2020) (unpublished).

But this Court has suggested the question has merit. In *United States v. Martinez*, 811 F. App'x 396 (9th Cir. 2020) (unpublished), it

vacated an order denying a motion to suppress and remanded. That was because "the district court did not address whether, in light of the fact that [the arresting officer] is a state officer, it would be consistent with the Fourth Amendment to consider whether there was probable cause to believe the car contained evidence of a violation of *federal* marijuana laws." *Id.* at 398.

To be sure, several courts have reached contrary conclusions in the wake of various states decriminalizing marijuana possession. *See, e.g.*, *Robinson v. State*, 152 A.3d 661 (Md. 2017). But the disagreement underscores the problem's complexity and that the majority was wrong to solve it unnecessarily.

### 4. The Supreme Court has declined to resolve whether preemption concerns bar a state officer from prolonging a seizure because of suspicions of an "immigration crime."

The Supreme Court has recognized another potential issue with the majority's reasoning. If state officers have carte blanche to enforce *any* federal law, that can undermine Congress's comprehensive enforcement scheme in certain fields. *Arizona v. United States* shows that the problem is real. There, the Supreme Court held that, under preemption principles, states cannot give their officers authority to arrest people when they suspect *civil* violations of certain immigration laws. 567 U.S. at 403–10.

But in doing so, the Court explicitly declined to "address whether reasonable suspicion of illegal entry or another immigration *crime* would be a legitimate basis for prolonging a detention, or whether this too would be pre-empted by federal law." *Id.* at 414. In other words, even the Supreme Court recognized this is a can of worms. The majority opinion, apparently, did not.

No doubt "[t]hese are perplexing questions." *Whitehouse v. Illinois Cent. R. Co.*, 349 U.S. 366, 372 (1955) (Frankfurter, J.). But that underscores how deeply the majority erred. "Their difficulty admonishes [this Court] to observe the wise limitations on [its] function and to confine [it]sel[f] to deciding only what is necessary to the disposition of the immediate case." *Id.* at 372–73. The majority must heed that admonishment. This Court should grant the Petition and limit any disposition to the questions that must be decided.

## CONCLUSION

Amici respectfully urge this Court to grant the Petition.

Respectfully submitted,

Dated:   June 27, 2025          */s/ Daniel J. Yadron, Jr.*
                                Daniel J. Yadron, Jr.
                                Vincent Brunkow
                                Kasha Castillo
                                Federal Defenders of San Diego, Inc.
                                225 Broadway, Suite 900
                                San Diego, California 92101-5097
                                Telephone: (619) 234-8467
                                danny_yadron@fd.org
                                Attorneys for Amici Curiae

**ADDITIONAL COUNSEL**

Fidel Cassino-DuCloux
Federal Public Defender, District of Oregon
101 Southwest Main Street, Room 1700
Portland, OR 97204

Colin Fieman
Federal Public Defender, Western District of Washington
Westlake Center Office Tower
1601 Fifth Avenue, Suite 700
Seattle, WA 98101

Andrea George
Executive Director, Federal Defenders of Eastern Washington and
Idaho
601 West Riverside Avenue, Suite 900
Spokane, WA 99201

Rachel Julagay
Executive Director, Federal Defenders of Montana, Inc.
104 2nd Street South, Suite 301
Great Falls, MT 59401

Salina M. Kanai
Federal Public Defender, District of Hawaii
Prince Kuhio Federal Building
300 Ala Moana Boulevard, Suite 7104
Honolulu, HI 96850

Jodi Linker
Federal Public Defender, Northern District of California
450 Golden Gate Avenue
19th Floor, Room 19-6884
San Francisco, CA 94102

Heather Williams
Federal Defender, Eastern District of California
801 I Street, 3rd floor
Sacramento, CA 95814

Leilani V. Lujan
Federal Public Defender, District of Guam and the Northern Mariana
Islands
First Hawaiian Bank Building
400 Route 8, Room 501
Mongmong, GU 96910

Jamie McGrady
Federal Public Defender, District of Alaska
188 W Northern Lights Blvd, Suite 700
Anchorage, AK 99503

Cuauhtemoc Ortega
Federal Public Defender, Central District of California
321 East 2nd Street
Los Angeles, California 90012

Nicole Owens
Executive Director, Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, ID 83702

Jon M. Sands
Federal Public Defender, District of Arizona
850 West Adams Street, Suite 201
Phoenix, AZ 85007

## CERTIFICATE OF COMPLIANCE

This brief contains 4171 words, excluding the items exempted by Fed. R. App. P. 32(f) and the disclosures required by Fed. R. App. P. 29(a)(4)(D) & (E). This brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of 9th Cir. Rule 29(c)(2).

Respectfully submitted,

DATED: June 27, 2025

*s/Daniel J. Yadron, Jr.*
Daniel J. Yadron, Jr.
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
danny_yadron@fd.org

Attorneys for Amici

23